UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAYLA SMILEY, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|       v. | )   No. 1:23-cv-01001-JPH-MKK |
| | ) |
| DR. KATIE JENNER, | ) |
| | ) |
|       Defendant. | ) |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

A new Indiana law prohibits public schools and their employees from providing instruction to students in prekindergarten through grade 3 on human sexuality. Kayla Smiley—a teacher who works for the Indianapolis Public Schools—alleges that the new law violates the United States Constitution because it (1) infringes on her right to free speech and (2) is so vague that she does not know what speech and actions may violate the law. She therefore asks the Court to enter a preliminary injunction preventing enforcement of the new law. Because Ms. Smiley has not shown some likelihood of succeeding on the merits of her claims, that motion is **DENIED**. Dkt. [9].

# I.
# Facts & Background[1]

House Enrolled Act 1608 went into effect on July 1, 2023, and the relevant provisions have been codified at Indiana Code chapter 20-30-17.[2] Under HEA 1608, "[a] school, an employee or staff member of a school, or a third party vendor used by a school to provide instruction may not provide any instruction to a student in prekindergarten through grade 3 on human sexuality."  Ind. Code § 20-30-17-2.[3]  But "[n]othing" in HEA 1608 "may be construed to prevent a school employee or a school staff member from responding to a question from a student regarding" human sexuality.  *Id.* § 20-30-17-4.

Kayla Smiley is a teacher who will be subject to HEA 1608 when she begins teaching an Indianapolis Public School class of first through third graders on July 31, 2023.  Dkt. 20-1 at 1.  She brought this action against the Indiana Secretary of Education, Dr. Katie Jenner, as head of the department overseeing teacher licensing.  Dkt. 1 at 2–3.  Ms. Smiley is concerned that she may unwittingly violate HEA 1608, thereby jeopardizing her teaching license, because she has "no idea what is encompassed within the term 'human

---

[1] By agreement of the parties, there has been limited discovery and no evidentiary hearing.  *See* dkt. 18; dkt. 19.  The Court therefore bases these facts on the written record, including the complaint and designated evidence.

[2] HEA 1608 also included an unrelated parental-notification provision; references to HEA 1608 in this order are limited to the prohibition on instruction on human sexuality.

[3] Under HEA 1608, "school" includes public schools, including charter schools; laboratory schools, the Indiana School for the Blind and Visually Impaired, and the Indiana School for the Deaf.  Ind. Code § 20-30-17-1.

sexuality,'" and does "not understand what is meant by the statute's term 'instruction.'" Dkt. 20-1 at 2. For example, she does not know if having books in her classroom library that "touch on LGBTQ themes" and "discuss and represent different family relationships and structures" violates HEA 1608. *Id.* at 3; *see* dkt. 26-1 at 19–26 (Smiley Dep. at 65–96). She contends that she would also "have to censor" herself by (1) not carrying her water bottle with its "message about tolerance of persons who are LGBTQ," (2) "remov[ing] the LGBTQ-supportive bumper stickers" that will be on her car, and (3) refraining from talking with students about "using the word 'gay' pejoratively.'" Dkt. 20-1 at 8–9.

Ms. Smiley therefore alleges that HEA 1608 is facially unconstitutional because it violates (1) the Fourteenth Amendment because it's too vague and (2) the First Amendment by restricting her speech. *Id.* at 9–10. She seeks a preliminary injunction under Federal Rule of Civil Procedure 65 prohibiting the enforcement of HEA 1608. Dkt. 9 at 2.

## II.
## Preliminary Injunction Standard

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Id.* "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell*, 990 F.3d at 545. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Cassell*, 990 F.3d at 545.

### III.
### Analysis

The Court's analysis begins and ends with one of the threshold requirements for obtaining a preliminary injunction—whether Ms. Smiley has shown some likelihood of succeeding on the merits of her claims.

**A. First Amendment**

Ms. Smiley argues that HEA 1608 is facially unconstitutional because it imposes "a significant burden on a substantial amount of Ms. Smiley's speech."

4

Dkt. 21 at 18–28.[4] The Secretary responds that HEA 1608 "does not reach *any* protected speech" and that even if it did, it is not unconstitutional on its face. Dkt. 27 at 10, 23–24. In making those arguments, the parties primarily dispute whether HEA 1608's language covers informal expression, like Ms. Smiley's "classroom library, the lessons on her water bottle or vehicle, or conversations that she has with students between classes or before or after school." Dkt. 29 at 13–14; *see* dkt. 27 at 10–18. However, "[a] federal district judge cannot definitively interpret" HEA 1608 as "the state judiciary can." *Trs. of Ind. Univ. v. Curry*, 918 F.3d 537, 541 (7th Cir. 2019). The Court therefore resolves the preliminary-injunction motion under the First Amendment precedents that both parties cite, without deciding HEA 1608's scope.

The "First Amendment's protections extend to 'teachers and students,' neither of whom 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2423 (2022) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). That does not mean, however, that "the speech rights of public school employees are so boundless that they may deliver any message to anyone anytime they wish." *Id.* "In addition to being private citizens, teachers . . . are also government employees paid in part to speak on the government's behalf and convey its intended messages." *Id.*

---

[4] While Ms. Smiley argues her Fourteenth Amendment vagueness claim first, that facial challenge is "disfavored" when the First Amendment is not implicated, *see Planned Parenthood of Ind. & Ky. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 603 (7th Cir. 2021), so the Court begins its analysis with the First Amendment claim.

So, when a public school teacher brings a First Amendment claim, the first question "involves a threshold inquiry into the nature of the speech at issue." *Id.* "If a public employee speaks 'pursuant to [her] official duties,'" that speech is, for constitutional purposes, "the government's own speech." *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). In that situation, the First Amendment does "not shield the individual from an employer's control and discipline." *Id.*; *Brown v. Chi. Bd. Of Educ.*, 824 F.3d 713, 715 (7th Cir. 2016) (If a teacher "is not wearing her hat 'as a citizen,' or if she is not speaking 'on a matter of public concern,' then the First Amendment does not protect her.").

Here, Ms. Smiley faces a heavy burden to show that HEA 1608 is unconstitutional on its face, rather than as applied to specific speech. *See* dkt. 21 at 19. "To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023). "Because it destroys some good along with the bad, invalidation for overbreadth is 'strong medicine' that is not to be casually employed." *Id.* In short, enjoining the enforcement of a law in its entirety, as Ms. Smiley seeks, is "only a last resort." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 476 (7th Cir. 2012).

The First Amendment does not require that "last resort" here. To start, in-classroom speech is "not the speech of a 'citizen' for First Amendment purposes" and therefore "does not implicate . . . First Amendment rights."

6

*Brown*, 824 F.3d at 715 (citing *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477 (7th Cir. 2007)); *see Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 892 (7th Cir. 2023) ("The district court correctly held that when Kluge was addressing students in the classroom, his speech was not protected by the First Amendment.").  So, in *Brown*, a teacher's First Amendment claim "fail[ed] right out of the gate" when he challenged his suspension for "a well-intentioned but poorly executed discussion of why [racial epithets] are hurtful and must not be used" that he led "in the course of his regular grammar lesson to a sixth grade class."  *Brown*, 824 F.3d at 715.  And in *Mayer*, an elementary teacher had no First Amendment right to share her personal views on military operations in Iraq during a "current-events session, conducted during class hours."  474 F.3d at 479.

*Brown* and *Mayer* also show that speech within the scope of a teacher's job duties isn't limited to speech that presents "official curriculum." *Brown*, 824 F.3d at 715 ("That [Brown] deviated from the official curriculum does not change [the] fact" that his speech was "pursuant to his official duties.").  The teacher's speech in *Brown* was spontaneous and in response to discovering students' notes that included racial slurs. *Id.* at 714.  What's more, the teacher's speech "appear[ed] to have been well-intentioned," explaining to the students why racial epithets are hurtful and must not be used. *Id.*  In *Mayer*, the teacher's speech, which reflected a specific political position, was made in response to a student's question.  474 F.3d at 478.  The Seventh Circuit nevertheless held that the First Amendment was not implicated in either

situation, because "[t]he Constitution does not entitle teachers to present personal views to captive audiences against the instructions of elected officials." *Mayer*, 474 F.3d at 480.

This principle applies with equal force to speech outside of the classroom. As the Supreme Court has explained, the "'critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties.'" *Kennedy*, 142 S. Ct. at 2424 (determining whether speech is within the scope of an employee's duties "should be undertaken 'practial[ly]'"). That's especially important here, in the elementary-education context, where much of what an elementary teacher says to students during a typical school day is spontaneous (as in *Brown*), in response to questions (as in *Mayer*), or otherwise outside of a formal lesson plan. *See id.* Instead of being outside an elementary teacher's official duties, those things are central to the job. And the students are not any less of a captive audience when having an informal conversation with their teacher in a hallway or choosing which of the teacher's books to look at during unstructured time.

Indeed, Ms. Smiley wants to use classroom-library books, water bottle messages, and car bumper stickers to "create teachable moments" for her students. Dkt. 1 at 4. She "carries her water bottle to instruct those who observe it on tolerance of persons who are LGBTQ." *Id.* at 8. She puts bumper stickers on her car to similarly "express . . . tolerance." Dkt. 26-1 at 30 (Smiley Dep. at 111). And she has chosen the books in her library to ensure that students have "a whole, full-circle world view where they could be open-minded

8

of other cultures" and "learn about the history of some . . . hot topic" issues. *Id.* at 18, 20 (Smiley Dep. at 63, 69). In short, according to Ms. Smiley, "everything sparks conversation" and "it is always used as a teachable moment." *Id.* at 30 (Smiley Dep. at 112). Such interactions, even when spontaneous and not part of official curriculum, are within the scope of Ms. Smiley's duties and responsibilities as an elementary school teacher and therefore not protected by the First Amendment. *Garcetti*, 547 U.S. at 421–22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.").

Ms. Smiley is therefore unlikely to be able to show that the First Amendment protects the speech that she is concerned may subject her to discipline. *See Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 411 (7th Cir. 1994); *accord Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332 (6th Cir. 2010) (Sutton, J.) (explaining that a teacher's "pedagogical choices" are unprotected because they are "speech 'pursuant to' the claimant's official duties" under *Garcetti*).

The Supreme Court's *Kennedy* opinion, which Ms. Smiley relies on, does not support Ms. Smiley's position. 142 S. Ct. at 2407. There, the Court held that a high school football coach spoke as a private citizen when he prayed on the field after a few games. *Id.* at 2424. That was because the prayers were not in the scope of his coaching duties, were at a time when coaches were "free to engage in all manner of private speech," and were "when students were

9

engaged in other activities." *Id.* at 2424–25. As the Court observed, "what matters is whether Mr. Kennedy offered his prayers while acting within the scope of his duties as a coach. And taken together, both the substance of Mr. Kennedy's speech and the circumstances surrounding it point to the conclusion that he did not." *Id.* at 2425.

      Here, by contrast, most if not all of the expression that Ms. Smiley fears could violate HEA 1608 is aimed at "teachable moment[s]" to impart specific lessons to elementary students. Dkt. 26-1 at 30 (Smiley Dep. at 112). There's therefore no indication that Ms. Smiley would be "stepp[ing] outside" her role as a teacher "to speak as a citizen." *Abcarian v. McDonald*, 617 F.3d 931, 937 (7th Cir. 2010). On the contrary, the situations that Ms. Smiley describes seem to be squarely within her job as an elementary school teacher. *Garcetti*, 547 U.S. at 422 ("When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee."). Indeed, Ms. Smiley cites no authority establishing that an elementary school teacher has the right to speak in her capacity as a private citizen when expressing an educational message to her students.

      At the least, even if some of the expression that Ms. Smiley is worried about—perhaps the LGBTQ-supportive bumper stickers on her car—is protected by the First Amendment, Ms. Smiley is nonetheless unlikely to be able to show that HEA 1608 is unconstitutional on its face. *See Bell v. Keating*, 697 F.3d 445, 456 (7th Cir. 2012) ("Facial invalidation for technical overbreadth is strong medicine, and is inappropriately employed unless the

10

statute substantially criminalizes or suppresses otherwise protected speech vis-à-vis its plainly legitimate sweep."). In short, Ms. Smiley asks for an injunction that would "throw out too much of the good based on a speculative shot at the bad." *Hansen*, 143 S. Ct. at 1948. "That is not the stuff of overbreadth—as-applied challenges can take it from here." *Id.*[5]

To be clear, the Court does not suggest that Ms. Smiley forfeited her First Amendment rights when she became a public school teacher. *See Garcetti*, 547 U.S. at 421. On the contrary, teachers are "the members of a community most likely to have informed and definite opinions" about issues of public concern related to education, so it's "essential that they be able to speak out freely on such questions" to the public. *Id.* That's why in *Pickering*, where the relevant speech was a teacher's letter to a local newspaper addressing issues including the school board's funding policies, the Supreme Court held that the school administration could not "'limit[ ] teachers' opportunities to contribute to public debate.'" *Garcetti*, 547 U.S. at 419 (citing *Pickering v. Bd. of Ed.*, 391 U.S. 563, 573 (1968)). But here, HEA 1608's prohibition of "instruction . . . on human sexuality" affects only expression to elementary students—rather than to the public—which the First Amendment does not protect when it's "against the instructions of elected officials." *Mayer*, 474 F.3d at 480.

---

[5] Because Ms. Smiley brings only a facial challenge, the Court does not address her likelihood of success on any as-applied challenge.

Without a substantial effect on protected speech, Ms. Smiley is unlikely to succeed on her claim that HEA 1608—on its face—violates the First Amendment.

### B. Fourteenth Amendment

Ms. Smiley argues that HEA 1608 is unconstitutionally vague under the Fourteenth Amendment because the terms "human sexuality" and "instruction" do not give fair notice of "what she may say and where she may say it." Dkt. 21 at 17. The Secretary responds that HEA 1608 is not too vague because it has "a substantial, understandable core." Dkt. 27 at 18.

"The void for vagueness doctrine rests on the basic due process principle that a law is unconstitutional if its prohibitions are not clearly defined." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012). "[A] statute is only unconstitutionally vague if it fails to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner." *Id.* In short, due process "does not demand perfect clarity and precise guidance." *Id.*

Because Ms. Smiley has not shown some likelihood of success on her First Amendment claim, her facial vagueness challenge is "limited" and "disfavored." *Planned Parenthood of Ind. & Ky. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 603 (7th Cir. 2021) ("The Supreme Court has repeatedly stated that facial invalidation of legislation is disfavored."). HEA 1608 is therefore unconstitutional on its face only if it "has no discernable core" of

understandable meaning and "lacks any ascertainable standard." *Id.* at 603–04; *see Trs. of Ind. Univ. v. Curry*, 918 F.3d 537, 540 (7th Cir. 2019).

Here, "instruction . . . on human sexuality" is not so vague that it lacks a core of understandable meaning. Those terms are no vaguer than "acquires," "receives," or "transfers," all of which the Seventh Circuit has held to be understandable. *Trs. of Ind. Univ.*, 918 F.3d at 540. And they are certainly more definite than "reasonable," which also "has enough of a core to allow its use in situations where rights to speak are at issue." *Id.* Like each of those terms, "instruction" and "human sexuality" are terms that people "use and understand in normal life." *Id.* So Ms. Smiley has not been given "no guidepost" from which to "divine what sort of conduct is prohibited." *Planned Parenthood of Ind. & Ky.*, 7 F.4th at 603.

Indeed, Ms. Smiley admits that HEA 1608 legitimately applies to at least formal teaching on sex education or sexually transmitted diseases. Dkt. 21 at 10; dkt. 29 at 9. She argues that those things don't qualify as a "core" to the statute because "there is no official course on 'human sexuality' taught to students in kindergarten through third grade." Dkt. 21 at 16. But that doesn't remove the possibility that a teacher could insert human sexuality into a lesson plan on their own, and it does not make the prohibition less understandable. *See Planned Parenthood of Ind. & Ky.*, 7 F.4th at 604 (finding an understandable core centered on situations that "almost never occur"). Those "clear-cut cases" are therefore a "core of easily identifiable and

13

constitutionally proscribable conduct" that "renders [HEA 1608] immune from this pre-enforcement facial challenge." *Id.* at 603–04.

Ms. Smiley worries that her classroom-library books, water bottle messages, car bumper stickers, and passing conversations with students may unwittingly violate HEA 1608. *See* dkt. 21 at 4–12. But even if there are questions about whether these actions and expressions come within HEA 1608's scope, they do not undermine or remove HEA 1608's understandable core. *See Planned Parenthood of Ind. & Ky.*, 7 F.4th at 605 ("The enforcement of the Statute will inevitably present many uncertainties at the margins, but the resolution of those 'edge questions' arising from the enforcement of a state law is a principal role of the state's courts.").

Nor does Ms. Smiley argue that she could not bring an as-applied challenge if the Department of Education were to initiate proceedings to suspend or revoke her teaching license. *See Trs. of Ind. Univ.*, 918 F.3d at 541 ("When a statute is accompanied by a system that can flesh out details, the due process clause permits those details to be left to that system."). That is the appropriate way to raise constitutional concerns about the periphery of a statute's application. *See id.* ("[A] core of meaning is enough to reject a vagueness challenge, leaving to future adjudication the inevitable questions at the statutory margin."). So while "an as-applied challenge to [HEA 1608] may have a different outcome, *this* challenge to the Statute fails because it is a

14

facial challenge to a statute with a discernable core." *Planned Parenthood of Ind. & Ky.*, 7 F.4th at 604.[6]

Ms. Smiley therefore has not shown some likelihood of success on her due process claim.[7]

## IV.
## Conclusion

Ms. Smiley has not shown some likelihood of success on her First Amendment claim or on her Fourteenth Amendment claim. Her motion for preliminary injunction is therefore **DENIED**. Dkt. [9]. The Secretary's motion to strike is **DENIED** because the challenged evidence would not affect the outcome of the motion for preliminary injunction. Dkt. [25].

**SO ORDERED.**

Date: 7/28/2023

*[signature: James Patrick Hanlon]*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[6] To support her argument, Ms. Smiley relies on examples of Indiana lawmakers who, in debating HEA 1608, were uncertain about how it may apply in some situations. *See* dkt. 21 at 7–10. The Secretary has moved to strike that evidence, arguing that it does "not meet the statutory requirements to be considered Indiana legislative history or evidence of the meaning of the law." Dkt. [25]. Because the cited examples go to the statute's "margins" rather than its "core," *see Marion Cnty. Prosecutor*, 7 F.4th at 605, the motion to strike is **DENIED** as unnecessary to resolve this facial challenge.

[7] Because Ms. Smiley has not shown some likelihood of success on the merits justifying a preliminary injunction, the Court does not consider the other preliminary injunction factors. *See Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998).